UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-194-F

| | | |
|---|---|---|
| TREVOR GRAHAM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| UNITED STATES ANTI-DOPING | ) | |
| AGENCY, | ) | |
|     Defendant. | ) | |

This matter is before the court on defendant United States Anti-Doping Agency's ("USADA") Motion to Dismiss [DE-19] and *pro se* plaintiff Trevor Graham's ("Graham") Motions to Deny Relief to Defendant's Attorneys [DE-26; DE-27].[1] These motions have been fully briefed and are ripe for adjudication.

## I. FACTUAL AND PROCEDURAL HISTORY

Graham filed this action on June 7, 2010 against USADA claiming slander and various constitutional violations. Specifically, Graham contends that USADA "violated [his] [c]onstitutional Rights when they slandered [his] name for the whole world to see; based on allegations that [he] willingly provided and gave PERFORMING ENCHANCING DRUGS (STERIODS) to previous athletes and affiliated [his] name with Bay Area Laboratory Co-Operative (BALCO) and Victor Conte." [DE-5], ¶ 1. Graham claims that he was "never found guilty of PROVIDING STEROIDS OR ANY PERFORMING ENCHANCING DRUGS to any

---

[1] Graham filed his initial Motion to Deny Relief to Defendant's Attorneys [DE-26] on August 9, 2010. However, Graham failed to sign both the motion and certificate of service. On August 11, 2010, Graham refiled the Motion to Deny Relief to Defendant's Attorneys [DE-27] with the deficiencies cured.

of [his] athletes at any given time throughout [his] career as a track and field coach." [DE-5], ¶ 3.

Graham also alleges that USADA violated his "First Amendment Rights by not allowing [him] a hearing before the American Arbitration Association and members of the panel to hear [his] side of [USADA's] allegations." [DE-5], ¶ 3. Graham claims that the "USADA Protocol for Olympic and Paralympic Movement Testing handbook does not have any rules for banning coaches in any event." [DE-5], ¶ 4. Moreover, Graham contends that USADA violated his "DUE PROCESS OF LAW (5th and 14th AMENDMENT RIGHTS) by not allowing [him] to continue [his] passion for the sport that [he] love[s] so well." [DE-5], ¶ 5. Graham asserts that he was denied a fair hearing and had his "rights waived [to the hearing] without [his] knowledge by USADA after requesting a 'stay' while [he] pursue [his] criminal investigation case." *Id.* Graham argues that USADA allowed "attorney Joseph E. Zeszotarski to act on [his] behalf knowing that he no longer represent [him] effective November 2007." *Id.*

Based on these allegations, Graham requests that his "good name be reinstated with all sport agencies and the media as well as the ability to once again coach which must be done by USADA since they are alleging that they found me guilty of providing PERFORMING ENCHANCING DRUGS (STEROIDS) to former athletes that I have coached" and that he be "heard by the American Arbitration Association and members of the Panel as previously requested." [DE-5], ¶ 7. Graham also demands thirty million and 00/100 dollars ($30,000,000.00) in damages. [DE-5], ¶ 1.

On July 27, 2010, in response to Graham's complaint, USADA filed a Motion to Dismiss [DE-19] pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, arguing that this court lacked subject matter jurisdiction over this action and that Graham fails to state a claim

upon which relief can be granted. USADA, in its Memorandum in Support of its Motion to Dismiss [DE-21], contends that it should be awarded costs and attorney's fees incurred in the defense of this action.

On August 9, 2010, and, again, on August 11, 2010, Graham filed his Motion to Deny Relief to Defendant's Attorneys [DE-26; DE-27]. Specifically, Graham asks this court to deny attorney's fees[2] to the defendant's attorneys. *Id.* USADA, in response, requests that all of the arguments set forth in the Memorandum in Support of its Motion to Dismiss [DE-21] and Reply in Support of its Motion to Dismiss [DE-31] be incorporated in its current response [DE-33] to Graham's Motions to Deny Relief to Defendant's Attorneys [DE-26; DE-27].

## II. STANDARD OF REVIEW

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a case must be dismissed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). Federal courts, unlike state courts, are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This court may obtain subject matter jurisdiction based on either federal questions or diversity of citizenship. Federal question jurisdiction exists when the plaintiff alleges a violation of the "Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. Jurisdiction based on diversity of citizenship requires the plaintiff to show that the defendants are citizens of a different state than that of the plaintiff, and that the amount in controversy exceeds seventy-five thousand and 00/100 dollars ($75,000.00), exclusive of interest and costs. 28 U.S.C. § 1332(a). The plaintiff, ordinarily, must include a "short and plain statement of the grounds for the court's jurisdiction" in the complaint. FED.R.CIV.P. 8(a)(1).

---

[2] Graham, in support of this motion, reiterates many of the arguments made in his Response [DE-25] to USADA's Motion to Dismiss [DE-19].

3

In a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In considering a motion to dismiss based on Rule 12(b)(1), the court is "to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F. 3d 642, 647 (4th Cir. 1999).

The defendant may challenge subject matter jurisdiction two different ways under Rule 12(b)(1). First, the defendant may contend that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F. 2d 1213, 1219 (4th Cir. 1982). In such a challenge, the facts alleged in the complaint are taken to be true by the court. *Id.* A second way in which the defendant may challenge jurisdiction pursuant to Rule 12(b)(1) would be to contend that, though a complaint alleges sufficient facts to invoke subject matter jurisdiction, those facts are not themselves true. *Id*; *see also Kerns v. United States*, 585 F. 3d 187, 192 (4th Cir. 2009).

In a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in a complaint will be construed in the nonmoving party's favor and treated as true. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999). However, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion to dismiss, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is appropriate when the face of the complaint clearly

reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston-Salem*, 85 F. 3d 178, 181 (4th Cir. 1996); *see generally*, 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

In circumstances where a litigant is proceeding *pro se*, the court should keep in mind, when considering a Rule 12(b)(6) motion, that the *pro se* complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 92 (2007). Nevertheless, principles requiring generous construction of *pro se* pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1277 (4th Cir. 1985). The complaint must contain either direct or inferential allegations regarding all the essential elements of some viable legal theory to satisfy federal notice pleading requirements. *Id.* at 1278. District courts are not required to "conjure up questions never squarely presented to them." *Id.*

### III. ANALYSIS

USADA moves to dismiss all of Graham's claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Graham has moved to deny relief to USADA in the form of attorney's fees and costs. These motions will be addressed in turn.

**A. Motion to Dismiss**

USADA argues that, under Rule 12(b)(1), this court lacks subject matter jurisdiction because any claim asserted by Graham relating to a sanction imposed against him is governed by the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), which compels arbitration as the sole remedy for eligibility determinations. [DE-21], pp. 11-12. Moreover,

5

Case 5:10-cv-00194-F Document 34 Filed 03/31/11 Page 5 of 14

USADA claims that, because Graham has failed to exhaust his administrative remedies, the district court is deprived of subject matter jurisdiction. [DE-21], pp. 12-13. Specifically, on July 10, 2008, USADA contends that Graham, through his counsel, withdrew from the arbitration proceeding and acknowledged that USADA would enter a sanction. [DE-19], pp. 1-2. Finally, USADA argues that this court lacks subject matter jurisdiction as the Amateur Sports Act does not provide for a private right of action. [DE-21], p. 14.

Graham counters by arguing that Amateur Sports Act was adopted by Senator Ted Stevens "to protect athletes not coaches."[3] [DE-25], p. 1. Graham also claims that this court does not lack jurisdiction as he is not a member of any national governing body in the purview of the Amateur Sports Act as he has "never paid dues or completed an application to become a member of [United States Track and Field Association] or any other [national governing body]." [DE-25], p. 2. Moreover, Graham contends that he was unaware that he waived his right to arbitration as USADA allowed attorney Joseph E. Zeszotarski to act on his behalf knowing that he "was not [his] attorney" and never received any copies of correspondences regarding his waiver of arbitration.[4] [DE-25], p. 3. Because he was never granted a hearing before the American Arbitration Association, Graham contends that he "was unable to file an appeal to the Court of Arbitration of Appeals which must be done within 21 days of the hearing." [DE-25], p. 5. Finally, Graham argues that as he was "never found guilty in a high or lower court for

---

[3] Graham also argues that no rules were in place at the time he was banned from coaching by USADA. *See* [DE-25], p. 11. As evidence, Graham points out that USADA has provided its protocol handbook which was implemented in 2009. *Id.*

[4] Graham also states that USADA "lack jurisdiction, [and] only the Arbitrator can grant an award based on evidence presented by the Plaintiff" and "USADA can suggest a sanction but the final decision lies solely on the Arbitration." [DE-25], p. 4.

6

Case 5:10-cv-00194-F Document 34 Filed 03/31/11 Page 6 of 14

doping," any sanction or ban against him is not only improper, but is "double jeopardy."[5] [DE-25], p. 6.

Congress passed the Amateur Sports Act in 1978, creating a hierarchy for the management of amateur Olympic sports in the United States. *See* 36 U.S.C. § 220503. At the very top of the hierarchy is the United States Olympic Committee, designated by Congress as the coordinating entity for amateur sports that Americans compete in internationally. *See id.* At the next level are national governing bodies for each sport included in the Olympic Games, which are critical to carrying out the Amateur Sports Act's central purpose. *See* 36 U.S.C. § 220521. Once established, a national governing body has broad authority, which includes acting as the coordinating body for amateur athletic activity in the United States, conducting amateur athletic competitions, and establishing procedures for determining eligibility standards. *See* 36 U.S.C. § 220523. The United States Olympic Committee has contracted with USADA to "conduct drug testing, manage test results and adjudicate disputes for participants in the Olympic movement within the United States and to provide educational information to those participants." [DE-32], Ex.1, p. 3.

Under the Amateur Sports Act, Congress vested the United States Olympic Committee with the power to "exercise exclusive jurisdiction, directly or through constituent members or committees, over all matters pertaining to the United States participation in the Olympic Games." 36 U.S.C. § 220503(3)(A). The Amateur Sports Act also created and required the United States Olympic Committee to "provide swift resolution of conflicts and disputes involving amateur athletics, national governing bodies, and amateur sports organizations, and

---

[5] Although Graham claims that he was "never found guilty of PROVIDING STEROIDS OR ANY PERFORMING ENCHANCING DRUGS to any of [his] athletes at any given time throughout [his] career as a track and field coach," he does not mention the issue of "double jeopardy" in his complaint. [DE-5], ¶ 3

protect the opportunity of any amateur athlete, *coach*, trainer, manager, administrator, or official to participate in amateur athletic competition." 36 U.S.C. § 220503(8) (emphasis added).

Moreover, Congress did not expressly provide for a private cause of action under the Amateur Sports Act. *Michels v. U.S. Olympic Comm.*, 741 F. 2d 155, 157 (7th Cir. 1984); *see also Oldfield v. Athletic Congress*, 779 F. 2d 505 (9th Cir. 1985)(concluding that Congress had not intended to allow athletes to sue in federal court to enforce rights created by the Amateur Sports Act). However, the United States Olympic Committee may be sued with respect to matters not arising under the Amateur Sports Act. *See Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179 (finding that Title II of Civil Rights Act of 1964 applied to prevent discrimination on basis of religion at judo competition); *see Sternberg v. U.S.A. Nat'l Karate-DO Fed'n., Inc.*, 123 F. Supp. 2d 659 (E.D.N.Y. 2000)(proceeding on a Title IX claim against karate national governing body based on organization's decision to withdraw women's karate team from international competition). Nevertheless, the Amateur Sports Act still preempts state law causes of action that essentially seek relief based on an athlete's eligibility. *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F. 3d 580, 596 (7th Cir. 2001)(finding that the Amateur Sports Act not only preempted eligibility challenges brought directly under it, but other state law causes of action that essentially sought relief based on the athlete's eligibility).

For the case at bar, Graham asserts claims that *purport* to be based on the Constitution and a state law claim of slander.[6] Specifically, Graham argues that USADA violated his "First

---

[6] Although Graham does not explicitly assert a claim under the Amateur Sports Act, he indicates that he is entitled to an arbitration hearing before the American Arbitration Association. As mentioned previously, Amateur Sports Act grants the United States Olympic Committee exclusive jurisdiction in determining eligibility for athletes and coaches. *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001). The United States Olympic Committee has delegated the investigation of alleged doping violations to USADA, which calls for arbitration as its main vehicle for determining these violations. *See* [DE-32], Protocol for Olympic Movement Testing, p. 3. As Graham is arguing that he is entitled to arbitration before the American Arbitration Association, the court could potentially construe this request as an assertion of a private right of action under the Amateur Sports Act, which as

Amendment Rights by not allowing [him] a hearing before the American Arbitration Association and members of the panel to hear [his] side of [USADA's] allegations" and his "DUE PROCESS OF LAW (5th and 14th AMENDMENT RIGHTS) by not allowing [him] to continue [his] passion for the sport that [he] love[s] so well[,]" specifically claiming that he was denied a fair hearing and had his "rights waived [to the hearing] without [his] knowledge by USADA after requesting a 'stay' while [he] pursue [his] criminal investigation case." [DE-5], ¶ 3, 5. Graham further claims that USADA slandered "[his] name for the whole world to see; based on allegations that [he] willingly provided and gave PERFORMING ENCHANCING DRUGS (STERIODS) to previous athletes and affiliated [his] name with Bay Area Laboratory Co-Operative (BALCO) and Victor Conte" and requests that his "good name be reinstated with all sport agencies and the media as well as the ability to once again coach which must be done by USADA since they are alleging that they found me guilty of providing PERFORMING ENCHANCING DRUGS (STEROIDS) to former athletes that I have coached" and that he be "heard by the American Arbitration Association and members of the Panel as previously requested." [DE-5], ¶ 1.

In the court's view, all of these claims are premised on challenging Graham's eligibility, namely, the lifetime ban imposed on Graham as a coach for amateur athletes in Olympic sports. In other words, although Graham has *labeled* his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes. As eligibility determinations fall within the exclusive parameters of the Amateur Sports Act, this court lacks jurisdiction to hear Graham's claims. *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F. 3d at 596; *see Michels v. U.S. Olympic Comm.*, 741 F. 2d at 157.

---

previously mentioned, is not available. *See Oldfield v. Athletic Congress*, 779 F.2d 505 (9th Cir. 1985). Nevertheless, the court will overlook this potential limitation as Graham is a *pro se* plaintiff.

The case *Lee v. U.S. Taekwondo Union*, 331 F.Supp.2d 1252 (D. Haw. 2004), is illustrative here. Here, Lee, as a former coach, challenged the United States Taekwondo Union's decision to remove him as the coach of the 2004 United States Olympic Taekwondo Team. Specifically, Lee claimed that the United States Olympic Taekwondo Union's decision to remove him as coach was based on his Korean ancestry. *Id.* at 1254. Lee alleged state law claims of ultra vires activity, breach of contract, breach of implied contract, interference with contract, and asserted rights to specific performance and equitable estoppel. *Id.* at 1257. The court found that all of these claims, although sound in state law, challenged his eligibility under the Amateur Sports Act and contested the method by which Lee was removed as coach. *Id.* Therefore, the court concluded it lacked jurisdiction to hear these claims as Lee had no private right to bring such a challenge in court as eligibility determinations are in the exclusive purview of the Amateur Sports Act and the United States Olympic Committee. *Id.*

The *Lee* court, however, did recognize some exceptions to this general rule. For instance, the court stated that, notwithstanding the Amateur Sports Act's preemption of claims, federal courts may entertain a "very limited role in ensuring that amateur sports organizations follow their own internal rules for determining eligibility." *Id.* at 1258. Furthermore, the court also concluded that "while the Amateur Sports Act grants the [United States Olympic Committee] exclusive jurisdiction over 'all matters pertaining to United States participation in the Olympic Games,' the Act does not expressly supersede other federal statutes." *Id.* at 1259. The Amateur Sports Act, in other words, does not explicitly state that "an athlete's or coach's federal rights independent of those conferred by the Act fall within 'matters pertaining to United States participation in the Olympic Games.'" *Id.* As a result, the court concluded that Lee could proceed with his federal anti-discrimination claim under 42 U.S.C. § 1981 as long as "the

10
Case 5:10-cv-00194-F Document 34 Filed 03/31/11 Page 10 of 14

remedy he seeks is not within the exclusive jurisdiction of the [United States Olympic Committee]."[7] *Id.*

Again, although Graham, similar to Lee, purports to present claims outside of the Amateur Sports Act, namely, under the Constitution and the law of slander, ultimately, he is contesting his eligibility to coach amateur athletes involved in Olympic sports, a remedy only available under the Amateur Sports Act. Consequently, these claims are outside the subject matter jurisdiction of this court. The court further notes that the two exceptions to this general rule, as laid out in *Lee*, do not apply in this case. First, the court does recognize that it has a limited role in ensuring that the amateur sports organizations follow their own rules for determining eligibility. However, in this case, USADA followed the proper protocol in determining the proper sanction for Graham. USADA offered arbitration to Graham, but he subsequently withdrew.[8] As a result of the withdrawal, Graham was subject to any sanction proposed by USADA, which in this case was a lifetime ban from coaching amateur athletes involved in Olympic sports. Second, although the court is in recognition that the Amateur Sports Act does not explicitly preempt a federal right independent of those conferred by the Act, this exception is not applicable here as Graham's claims are, once again, *labeled* as violations of constitutional rights and slander, but essentially seek to challenge his eligibility to coach amateur Olympic athletes. Therefore, USADA's Motion to Dismiss [DE-19] is ALLOWED for lack of

---

[7] The court in *Lee* emphasized that it was not holding that a person has a private right of action under the Amateur Sports Act itself for racial discrimination violations under 42 U.S.C. § 1981. Instead, the court held that the Amateur Sports Act does not nullify or supersede other federal laws that provide private rights of action to ensure freedom for discrimination.

[8] Graham claims that USADA allowed attorney Joseph E. Zeszotarski to act on his behalf knowing that he no longer represented him effective November 2007. As evidence, Graham provides a letter which indicates that the USADA was aware that Joseph E. Zeszotarski withdrew as counsel for Graham's *criminal* trial. [DE-25], Ex. 2. However, nothing in the record suggests that Joseph E. Zeszotarski was not representing Graham in addressing any issues pertaining to his *arbitration* hearing. Therefore, it appears that USADA did not violate any of its own internal rules in handling Graham's withdrawal from arbitration.

subject matter jurisdiction. Because these claims are dismissed pursuant to Rule 12(b)(1), the court does not reach USADA's ground for dismissal pursuant to Rule 12(b)(6).

### B. Motion to Deny Relief to Defendant's Attorneys

Graham requests that this court deny attorney's fees for USADA. Seemingly, this motion is in response to USADA's request[9] for attorney's fees and costs in its Memorandum in Support of its Motion to Dismiss [DE-21]. In support of this request, Graham reiterates that his Due Process rights were violated as his opportunity to be heard before the American Arbitration Association was waived without his knowledge. USADA, in response, asks this court to incorporate all arguments as set forth in its Motion to Dismiss [DE-19], Memorandum in Support of its Motion to Dismiss [DE-21] and its Reply in Support of its Motion to Dismiss [DE-31].

At the outset, the court notes that under the "American Rule," each party must bear its own attorney's fees and costs, absent explicit Congressional authorization to the contrary. *See Alyeska Pipeline Serv. Co. v. The Wilderness Society*, 421 U.S. 240, 247 (1975). Despite the American Rule, in *Hall v. Cole*, the United States Supreme Court held that "it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly or for oppressive reasons.' " 412 U.S. 1, 5 (1973). This holding was not disturbed by the Supreme Court's subsequent decision in *Alyeska Pipeline* in which the court strongly reaffirmed the "American Rule" and condemned the award of attorney's fees when Congress had not authorized such an award. In *Alyeska Pipeline*, the court expressly excluded from its condemnation attorney's fees awarded by a district court "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . .' " *Alyeska Pipeline*, 421 U.S. at 258-59 (citations omitted). The Court concluded that the power to award

---

[9] USADA has not filed a separate motion for attorney's fees and costs nor has it provided any additional evidence to support its position. USADA contends, in their Memorandum in Support of their Motion to Dismiss [DE-21], that it should be awarded costs and attorney's fees in "defense of this frivolous and groundless action."

12

fees under that circumstance was an "unquestionabl[e]" assertion of the "inherent power" of the court. *Id.*

However, the award of attorney's fees to prevailing defendants is not frequent. *See Christiansburg Garment Co., v. EEOC*, 434 U.S. 412 (1978)(holding that a prevailing defendant was not entitled to attorneys' fees unless there was special circumstances which warranted such award). The prevailing defendant "cannot be awarded attorney's fees unless an examination of the plaintiff's intended evidence indicated that the claim is frivolous, unfounded, and vexatiously pursued." *Colbert v. Yakin Valley Tel. Membership Corp.*, 960 F. Supp. 84, 86 (M.D.N.C. 1997)(citing *Marquart v. Lodge 837, Int'l. Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842, 852 (8th Cir. 1994)). Stated differently, the court must have an opportunity to review the actual merits of plaintiff's claims, which "at a minimum requires the court to determine a motion for summary judgment on the merits in defendant's favor." *Id.*

Here, as all of Graham's claims have been dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), this court has not been able to examine the merits of Graham's claims. The court, consequently, is unable to determine whether Graham's claims were made "in bad faith, vexatiously, wantonly, or for oppressive reasons."[10] *Alyeska Pipeline*, 421 U.S. at 258-59 (citations omitted). Accordingly, Graham's Motion to Deny Relief to Defendant's Attorney [DE-27; DE-28] is ALLOWED.

---

[10] The court notes that Graham, being a *pro se* litigant, would have added a layer of difficulty in ascertaining whether his claims were indeed made "in bad faith, vexatiously, wantonly, or for oppressive reasons" had the court reach that issue. *Alyeska Pipeline*, 421 U.S. at 258-59 (citations omitted). *Pro se* litigants will undoubtedly find it harder to recognize subtle factual or legal deficiencies in his or her claims.

13

## IV. CONCLUSION

For the foregoing reasons, USADA's Motion to Dismiss [DE-19] is ALLOWED. Graham's Motion to Deny Relief to Defendant's Attorneys [DE-26; DE-27] is ALLOWED. The Clerk of Court is directed to close this case.

SO ORDERED.

This, the 31th day of March, 2011.

                                                JAMES C. FOX
                                                Senior United States District Judge